## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHARON S. CARTER, | : | |
| | : | CIVIL ACTION |
| *Plaintiff*, | : | |
| | : | |
| v. | : | No.  14-2660 |
| | : | |
| MID-ATLANTIC HEALTHCARE, LLC, | : | |
| | : | |
| | : | |
| *Defendant*. | : | |

**Goldberg, J.**                                                         **January 12, 2017**

### MEMORANDUM OPINION

This is an age discrimination case. Plaintiff, Sharon Carter, has filed a two-count complaint against Mid-Atlantic Healthcare, LLC ("Defendant" or "Mid-Atlantic") alleging that she was terminated in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*. (Count I) and the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq*. (Count II). Presently before me is Mid-Atlantic's motion for summary judgment. For the reasons that follow, Mid-Atlantic's motion will be granted.

## I.   FACTUAL & PROCEDURAL BACKGROUND[1]

Plaintiff began working for Maplewood Manor ("Maplewood") in June 2005. Maplewood provides long-term nursing and rehabilitation services. Beginning August 2006, Plaintiff served as "Admissions Director," which meant that she was responsible for, *inter alia*, bringing in new patients and processing their paperwork, coordinating with other departments within Maplewood, and reaching out to area hospitals to secure referrals for Maplewood. At the time Plaintiff began her employment, Maplewood was owned and operated by a company named NewCourtland. Plaintiff claims that she worked for several years without receiving any "write

---

[1] The following facts are undisputed, unless otherwise noted.

ups" or other disciplinary action under NewCourtland's management and ownership of Maplewood. (Compl. ¶¶ 15, 18(a); Def.'s SOF ¶¶ 3–5, 11–12.)

In July 2011, Defendant Mid-Atlantic purchased Maplewood from NewCourtland, along with four other facilities. Plaintiff continued working at Maplewood as the Admissions Director under Mid-Atlantic's ownership. (Compl. ¶¶ 15, 18(a); Def.'s SOF ¶¶ 11, 12.)

Beginning in December 2011, approximately five (5) months after Mid-Atlantic acquired Maplewood, Plaintiff was called into "various meetings" that focused on her job performance. For instance, in December 2011, Plaintiff met with Morgan Fogelman, Regional Director of Business Development; Sarah Balmer, Nursing Home Administrator; and another human resources employee. Plaintiff was instructed that Admissions Directors were now expected to do "more marketing," and would also have to "meet the Medicare budget each month." (Compl. ¶ 18(a); Def.'s SOF ¶¶ 13–16, 21–22.)

On March 1, 2012, Plaintiff again met with Fogelman, Balmer, and a human resources representative, Jennifer Kelly. Plaintiff received a "verbal warning" at this meeting regarding, *inter alia*, her marketing performance and Medicare goals. (Compl. ¶ 18(b); Def.'s SOF ¶ 24.) In her complaint, Plaintiff acknowledges that "Medicare goals admittedly had not been met[,]" but alleges that she was being held to unrealistic and unachievable goals given the lack of resources at the Maplewood facility. (Compl. ¶ 18(b).)[2]

On April 18, 2012, Sarah Balmer met with Plaintiff and informed her that she was being placed on a Performance Improvement Plan ("PIP") (Def.'s SOF ¶ 25; Def.'s Ex. F.) On April 26, 2012, shortly after being placed on the PIP, Plaintiff again met with Fogelman, Balmer, and

---

[2] For example, Plaintiff alleges that the facility was constructing a new gym, but it was not completed in a timely manner, which made Plaintiff's job of showing the facility to prospective clients difficult. Plaintiff further alleges that Maplewood "did not even have presentable furniture in the lobby[,]" which further prevented her from adequately doing her job. Ultimately, Plaintiff claims that she was blamed for Defendant's failures. (Compl. ¶¶ 18(b), 18(c).)

Kelly to discuss her job performance. Plaintiff claims that although she disagreed with the "assessment of her alleged shortcomings, [she] attempted to address the stated concerns." (Compl. ¶ 18(c); Def.'s SOF ¶ 27.)

In early May 2012, Plaintiff again met with Fogelman, Balmer, and Kelly to review her progress and performance. Fogelman allegedly stated during this meeting that he was unhappy with Plaintiff's quarterly marketing plan ("QMAP"), and that Plaintiff appeared to have an "excuse for everything." Plaintiff was further advised that she had not been communicating enough with the hospital liaisons. (Compl. ¶ 18(d).)

On June 13, 2012, Plaintiff met with Fogelman, Balmer, and Kelly to discuss an "Open House" event that was supposed to help increase new admissions to Maplewood. Plaintiff had been tasked with coordinating this event, but nobody showed up. (Def.'s Ex. I; Pl.'s Dep. 125:12–18; 126:4–12.)

On July 13, 2012, Plaintiff was terminated at the age of fifty-eight (58). (Compl. ¶ 18(f); Def.'s Ex. K; Def.'s SOF ¶ 4.) In the "Disciplinary Action Form" outlining the basis for Plaintiff's termination, Mid-Atlantic (through Balmer, Fogelman, and a human resources representative) indicated that it was Plaintiff's "[f]ailure to meet expectations of PIP dated 4/18/12" and "[p]oor job performance." (Def.'s Ex. K.) The form additionally states that Plaintiff failed to meet Medicare and HMO census goals, exhibited inadequate communication, and displayed poor "QMAP" and marketing activity quality. Plaintiff refused to sign the form. (Id.)

In the months leading up to Plaintiff's termination, at least three other employees—all over the age of 40—were also terminated. (See Pl.'s Exs. V, W.)

On July 16, 2012, Lenora Vaughn assumed the role of Admissions Director for Maplewood, directly replacing Plaintiff. Lenora Vaughn was fifty-four (54) years-old at the time of her hiring. (Def.'s SOF ¶¶ 40–41; Def.'s Exs. L, M.)

Plaintiff filed her two-count complaint on May 8, 2014, alleging that Mid-Atlantic's conduct violated the ADEA and PHRA. Regarding her termination, Plaintiff generally alleges that she was "blamed for problems beyond her control," and that Mid-Atlantic "embarked on a determined course to fire [her]." (Compl. ¶ 18(f).) In other words, Plaintiff disputes that poor work performance was the real reason for her termination. Following a period of discovery, Mid-Atlantic filed a motion for summary judgment, which is currently before me. Mid-Atlantic argues that: (1) Plaintiff cannot establish a prima facie case of age discrimination under federal or state law; and (2) Plaintiff cannot demonstrate that Mid-Atlantic's facially legitimate, nondiscriminatory reasons for Plaintiff's termination were pretextual.

## II.    LEGAL STANDARD

A party moving for summary judgment bears the initial burden of demonstrating that there are no genuine issues of material fact in dispute, and that judgment is appropriate as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once a properly supported motion for summary judgment has been made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

An issue is "genuine" if a reasonable jury could rule in favor of the non-moving party based on the evidence presented. Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). A factual dispute is "material" if it might affect the outcome of the suit under the appropriate governing law. Id. at 423. The non-moving party cannot avert summary judgment with

speculation or conclusory allegations, but rather must cite to the record.  Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999); Fed. R. Civ. P. 56(c). On a motion for summary judgment, the court considers the evidence in the light most favorable to the non-moving party.  Anderson, 477 U.S. at 256.

### III.   ANALYSIS

Under the ADEA and the PHRA, an employer is prohibited from taking adverse employment actions against an employee "because of" the employee's age.[3] The phrase "because of" signifies that age must be more than a "motivating factor" in the employer's action and, therefore, "mixed motive" claims under Price Waterhouse v. Hopkins, 490 U.S. 228 (1989) are unavailable. Gross v. FBL Fin. Services, Inc., 557 U.S. 167, 175-80 (2009). As such, to establish a disparate-treatment claim under the ADEA or the PHRA "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." Id. at 177-78; Tomasso v. Boeing Co., 445 F.3d 702, 704–05 (3d Cir. 2006). Where, as with the case before me, a plaintiff has not produced direct evidence that age was the cause of her employer's course of action, the familiar burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) applies. See Smith v. City of Allentown, 589 F.3d 684, 690–92 (3d Cir. 2009).

Under the McDonnell Douglas framework, an employee must first establish a prima facie case of discrimination. Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013). A plaintiff

---

[3] The ADEA states that it shall be unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1).

The PHRA provides, in relevant part:

> It shall be an unlawful discriminatory practice . . . [f]or any employer because of the . . . age . . . of any individual . . . to discharge from employment such individual . . . or to otherwise discriminate against such individual . . . with respect to compensation, hire, tenure, terms, conditions or privileges of employment . . . if the individual . . . is the best able and most competent to perform the services required.

43 Pa. Con. Stat. § 955(a). The parties agree that the same legal standard applies to both of Plaintiff's claims. See Kautz v. Met-Pro Corp., 412 F.3d 463, 466 n.1 (3d Cir. 2005).

establishes a prima facie case of age discrimination by demonstrating that "(1) she is forty years of age or older; (2) the defendant took an adverse employment action against her; (3) she was qualified for the position in question; and (4) she was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." Id. "There is no hard-and-fast rule covering what a plaintiff must show in order to establish the McDonnell Douglas prima facie showing. Rather, the precise elements of a plaintiff's prima facie case may vary with the particular circumstances" of each case. Fasold v. Justice, 409 F.3d 178, 185 n.10 (3d Cir. 2005) (quotations and citations omitted).

Once a plaintiff establishes her prima facie case, the burden of production then shifts to the defendant to articulate a "legitimate, non-discriminatory reason" for the adverse employment action. Id. This "relatively light" burden is met "if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason." Id. At this stage, "[t]he proffered reason need only raise a genuine issue of fact as to whether the employer acted impermissibly." Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir. 2003).

If the employer offers a legitimate, non-discriminatory reason for its decision, the burden of production shifts back to the plaintiff to "provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination." Burton, 707 F.3d. at 426. "At all times, however, the burden of persuasion rests with the plaintiff." Smith, 589 F.3d at 690.

### A. *Plaintiff's Prima Facie Case*

Mid-Atlantic does not dispute that Plaintiff was over forty (40) years of age at the time of her termination, that she was qualified for the position of Admissions Director, or that Plaintiff's

termination on July 13, 2012 constituted an adverse employment action. (Def.'s Mot. Summ. J. at 6.) It is the final element—replacement by a sufficiently younger employee to support an inference of discriminatory animus—which Mid-Atlantic argues Plaintiff has failed to establish. (Def.'s Mot. Summ J. 6.)[4]

With respect to what age differential will be considered sufficient as a matter of law (i.e., sufficiently younger), the United States Court of Appeals for the Third Circuit has stated that "there is no particular age difference that must be shown, but while different courts have held ... that a five year difference *can* be sufficient, ... a one year difference cannot." Showalter v. Univ. of Pittsburgh Med. Ctr., 190 F.3d 231, 236 (3d Cir. 1999) (citations omitted) (emphasis added).

Mid-Atlantic emphasizes that Plaintiff's replacement, Lenora Vaughn, was fifty-four (54) years-old, and thus just four (4) years younger than Plaintiff. (Id.) Mid-Atlantic cites to a footnote in the Third Circuit's decision in Narin v. Lower Merion Sch. Dist. for the proposition that an age difference of seven (7) years, without more, is insufficient to establish a prima facie case because such a gap is not "materially" different for purposes of the "sufficiently younger" element. 206 F.3d 323, 333 n.9 (3d Cir. 2000). Mid-Atlantic further cites to multiple district court cases within this circuit acknowledging that the "sufficiently younger" element generally requires an age difference of "at least five years." See e.g., Reap v. Cont'l Cas. Co., 2002 WL 1498679, at *15 (D.N.J. June 28, 2002) ("Courts generally agree that satisfaction of the

---

[4] Plaintiff argues that the fourth element is often stated in more general terms that the adverse employment decision occurred under circumstances giving rise to an inference of intentional discrimination. (Pl.'s Resp. 9) (citing Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 410–11 (3d Cir. 1999)). Jones involved claims for race discrimination under Title VII and the PHRA. In the context of age discrimination claims brought under the ADEA, the Third Circuit has more recently instructed that "[w]here the plaintiff is not directly replaced, the fourth element is satisfied if the plaintiff can provide facts which if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 644 (3d Cir. 2015) (internal quotation marks omitted). Here, the parties agree that Plaintiff was directly replaced by Lenora Vaughn (age 54). Hence, I will rely on the "sufficiently younger" inquiry for purposes of the fourth element. See also Monaco v. Am. Gen. Assur. Co., 359 F.3d 296, 309 (3d Cir. 2004) ("[A] terminated plaintiff should not be able in a McDonnell Douglas burden shifting case to demonstrate a prima facie case of age discrimination without showing a difference in age between … her and the replacement employee sufficient to support an inference of age discrimination[.]").

sufficiently younger element of a prima facie ADEA case requires proof of an age difference of at least five years."); Martin v. Healthcare Bus. Res., 2002 WL 467749, at *5 n.7 (E.D. Pa. Mar. 26, 2002) ("For purposes of a prima facie ADEA case, the fourth element contemplates an age difference of at least five years.").

In addition to the cases cited by Mid-Atlantic, several other decisions within this circuit have concluded that an age differential of less than five years is insufficient—as a matter of law—to establish the final element of a prima facie case of age discrimination. See e.g., Knox v. Fifth Third Bancorp, 2014 WL 359818, at *13 (W.D. Pa. Feb. 3, 2014) (observing that the plaintiff's replacement was "approximately four-years younger," and such an age difference is "insufficient to raise an inference of discriminatory action … for purposes of the ADEA"); Fitzpatrick v. Nat'l Mobile Television, 364 F. Supp. 2d 483, 491 (M.D. Pa. 2005) (recognizing that a "four-year age difference is insufficient to raise an inference of discriminatory action"); Lloyd v. City of Bethlehem, 2004 WL 540452, at *6 (E.D. Pa. Mar. 3, 2004) ("The case law in this Circuit consistently holds that an age gap of less than five years is, as a matter of law, insufficient to establish fourth element of the prima facie test."); Gutknecht v. SmithKline Beecham Clinical Labs., Inc., 950 F. Supp. 667, 672 (E.D. Pa. 1996), aff'd, 135 F.3d 764 (3d Cir. 1997) ("Although no uniform rule exists, it is generally accepted that when the difference in age between the fired employee and … her replacement is fewer than five or six years, the replacement is not considered 'sufficiently younger,' and thus no prima facie case is made.").

In her Response, Plaintiff first highlights that the age differential between she and Lenora Vaughn is really 4.5 years. (Pl.'s Resp. 7.) Plaintiff emphasizes that there is no "magic number" with respect to an age differential that the Third Circuit has articulated to be sufficiently younger

as a matter of law, and therefore, summary judgment is not appropriate based on the age differential at issue in this case. (Pl.'s Resp. 8.)

In support of this argument, Plaintiff cites to two Third Circuit cases: Steward v. Sears Roebuck & Co., 231 F. App'x 201 (3d Cir. 2007) (non-precedential) and Sempier v. Johnson & Higgins, 45 F.3d 724 (3d Cir. 1995). In Steward, the court declined to adopt "a bright-line rule that a 6.75 year *average* age difference between a fired plaintiff and those who assume his job duties is, as a matter of law, insufficient to give rise to an inference of age discrimination." 231 F. App'x at 209 (emphasis added). Similarly, in Sempier, the court looked at the "*combined* differences in age" between the plaintiff and the two other employees to which a substantial portion if the plaintiff's job duties were delegated. 45 F.3d at 730 (emphasis added). One of the employees had been four years younger than the plaintiff, and the other ten. The court observed that the *combined* differences in age were "clearly sufficient to satisfy the fourth prong of a prima facie case[.]"[5] Id.

Plaintiff further cites to other district court decisions which have declined to conclude that an age differential of less than five years is insufficient, as a matter of law, to satisfy the "sufficiently younger" element. See e.g., Von Rudenborg v. Di Giorgio Corp., 2011 WL 4594220 (D.N.J. Sept. 30, 2011) (concluding that the plaintiff had satisfied the "sufficiently younger" element of his prima facie case despite his replacement being only three years

---

[5] In Steward, the court appeared to express doubt as to the utility of strictly looking at an average age differential for purposes of satisfying this element. Steward, 231 F. App'x at 209 ("Viewing the evidence in the light most favorable to Steward, we must consider not only the average age of those who assumed [the plaintiff's] job duties, but also the age of each individual coworker who took over some portion of [his] duties, as well as what portion of [his] duties each assumed."). In Steward, two of the plaintiff's primary "replacements" (i.e., those to whom the plaintiff's work had been delegated) were more than 15 years younger. Id. at 209. As such, the Third Circuit concluded that "the District Court erred in deciding whether to overturn the jury's verdict by categorically measuring the age difference between [the plaintiff] and his replacements as 6.75 years." Id. at 210. In any event, I question the applicability of Steward to the facts of the case before me because there are no allegations that Plaintiff's responsibilities were delegated to multiple "replacements," nor did the Third Circuit establish a precedential bright-line rule with respect to a sufficient age differential. I further note that the Third Circuit acknowledged its prior decision in Narin, which creates doubt as to whether Narin's oft-quoted footnote presently applies with the same force.

younger); <u>Robinson v. Matthews Int'l Corp.</u>, 2009 WL 735876 (W.D. Pa. Mar. 20, 2009), <u>aff'd</u>, 368 F. App'x 301 (3d Cir. 2010) (concluding that a four-year age difference, when viewed together with other evidence, satisfied the fourth element of the plaintiff's prima facie case).

By my calculation, the precise age differential between Plaintiff and her replacement, Lenora Vaughn, is four (4) years, five (5) months, and three (3) days. As noted above, the Third Circuit has recognized that an age differential of five years "can" be sufficient, but has not specifically held that a five-year differential must be established in order for a replacement to be considered "sufficiently younger" as a matter of law. Moreover, the United States Supreme Court has recognized that a "prima facie case operates as a flexible evidentiary standard" and was "never intended to be rigid, mechanized, or ritualistic." <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 512 (2002); <u>Furnco Const. Corp. v. Waters</u>, 438 U.S. 567, 577 (1978).

In light of the unsettled precedent with respect to the "sufficiently younger" element, the lack of clear guidance from the Third Circuit, the Supreme Court's directive that a prima facie case be viewed flexibly, and because I must view the evidence in the light most favorable to Plaintiff, and draw all reasonable inferences her in favor, I conclude that summary judgment would be premature based solely on Plaintiff's age differential with her replacement.[6] Accordingly, Plaintiff has met her burden in establishing a prima facie claim of age discrimination under the ADEA.

**B. *Mid-Atlantic's Legitimate, Nondiscriminatory Reason for Plaintiff's Termination***

Because Plaintiff has established a prima facie claim, the burden of production shifts to Mid-Atlantic to articulate a "legitimate, non-discriminatory reason" for Plaintiff's termination.

---

[6] The Third Circuit's instruction that five years "can be" sufficient necessarily implies that other considerations may be factored into the "sufficiently younger" analysis. Given the unique circumstances of this case (i.e., the undisputed fact that multiple other employees over 40 were also terminated within 60 days of Plaintiff's termination), I conclude that a four-year and five month age differential "can be" sufficient to establish a prima facie case.

Mid-Atlantic argues that Plaintiff was terminated because of "her poor job performance and failure to meet the expectations of [her] performance improvement plan." (Def.'s Mot. Summ. J. 19.) Mid-Atlantic points out that a failure to successfully fill one's job responsibilities is clearly a legitimate reason for termination, and cites to the Third Circuit's decision in <u>Wooler v. Citizens Bank</u>, 274 Fed. App'x 177, 180 (3d Cir. 2008) (non-precedential) in support of this assertion.

Here, Plaintiff does not dispute that she was placed on a performance improvement plan (which has been made part of the record), nor does she dispute that she received certain oral warnings from her supervisors in connection with her job performance. (<u>See</u> Def.'s Ex. F.) A defined goal of Plaintiff's PIP was to meet certain "Medicare and HMO census goals." (<u>Id.</u>) In the "Disciplinary Action Form," which documented Plaintiff's termination of employment, a stated reason for her termination was Plaintiff's [i]nability to meet Medicare & HMO census goals." (Def.'s Ex. K.) Also noted in Plaintiff's PIP was her "[l]ack of internal communication." (Def.'s Ex. F.) In her notice of termination, another stated reason was "[p]oor, inadequate and at times, incorrect communication" of various quantitative levels within Maplewood. (Def.'s Ex. K.) Finally, Plaintiff acknowledged that she was informed Admissions Directors were expected to do "more marketing" under Mid-Atlantic's ownership. Poor marketing activity/quality was yet another articulated reason outlined in Plaintiff's notice of termination, and Plaintiff admitted during her deposition that the "open house" event was unsuccessful. (<u>Id.</u>; Pl.'s Dep. 125:12–18; 126:4–12.)

Plaintiff responds that Sarah Balmer and Morgan Fogelman, the two primarily responsible for her termination, have not provided testimony in this case, and thus Mid-Atlantic cannot corroborate any of the alleged deficiencies set forth in Plaintiff's performance

improvement plan. Plaintiff thus argues that Mid-Atlantic has failed to establish a legitimate, non-discriminatory reason for her termination.

In light of the evidence discussed above, I conclude that Sarah Balmer and Morgan Fogelman's lack of testimony is not dispositive on this issue. See Burton, 707 F.3d at 426 (reiterating that a defendant's burden at this stage is "relatively light" and is satisfied where the employer "provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason.") (internal citations and quotation marks omitted); see also Andersen v. Mack Trucks, Inc., 118 F. Supp. 3d 723, 740 (E.D. Pa. 2015), aff'd, 647 F. App'x 130 (3d Cir. 2016) (same). Notably, a defendant "need not prove that the articulated reason actually motivated its conduct." Id.  Rather, the proffered reason "need only raise a genuine issue of fact as to whether the employer acted impermissibly." Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir. 2003).

Courts within this district have routinely accepted evidence of a plaintiff's failure to meet expected performance goals, in addition to poor work performance, as facially legitimate, non-discriminatory reasons for adverse employment decisions. See e.g., Cellucci v. RBS Citizens, N.A., 987 F. Supp. 2d 578, 590 (E.D. Pa. 2013) (determining that the defendant employer met its burden by setting forth "evidence that [the plaintiff's] employment was terminated due to her ongoing performance deficiencies"); Cridland v. Kmart Corp., 929 F. Supp. 2d 377, 387 (E.D. Pa. 2013) ("The Court finds [the defendant] has carried its burden [because] it has presented sufficient evidence to show it terminated [the plaintiff] based not on his age but on his continued, inadequate performance[.]").

Accordingly, I conclude that Mid-Atlantic has met its burden in establishing a facially legitimate, non-discriminatory reason for Plaintiff's termination.

### C. *Pretext*

The burden of production now shifts back to Plaintiff to establish, by a preponderance of the evidence, that Mid-Atlantic's proffered legitimate, non-discriminatory reason was pretextual. Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 644–45 (3d Cir. 2015). To establish pretext, a plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Burton, 707 F.3d at 426–27 (citing Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)). At the pretext stage, "the factual inquiry into the alleged discriminatory motives of the employer [rises] to a new level of specificity." Willis, 808 F.3d at 650.

#### i.      First Method of Pretext

Regarding the first method of demonstrating pretext, if a plaintiff's evidence pertains to the credibility of the employer's proffered justification, the evidence "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Fuentes, 32 F.3d at 765 (internal citations omitted).[7] Thus, to discredit an employer's proffered reason(s), a plaintiff "cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Id. at 765; see also Davis v. Pittsburgh Pub. Sch., 930 F. Supp. 2d 570, 601 (W.D. Pa. 2013) ("The court is

---

[7] "[I]f a plaintiff has come forward with sufficient evidence to allow a finder of fact to discredit the employer's proffered justification, she need not present additional evidence of discrimination beyond her prima facie case to survive summary judgment." Burton v. Teleflex Inc., 707 F.3d 417, 427 (3d Cir. 2013). "This is because the factfinder may infer from the combination of the prima facie case, and its own rejection of the employer's proffered reason, that the employer engaged in the adverse employment action for an invidious reason." Id. at 427.

neither permitted to get involved in the subjective business decisions of the employer, nor set its own employment standards for the employer, unless there is evidence of discrimination."). Instead, a plaintiff "may satisfy this standard by demonstrating, through admissible evidence, that the employer's articulated reason was not merely wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 413 (3d Cir. 1999) (quoting Keller v. Orix Credit All., Inc., 130 F.3d 1101, 1108 (3d Cir. 1997)). "The fact that an employee disagrees with an employer's evaluation of [her] does not prove pretext." Farzan v. Vanguard Grp., Inc., 582 F. App'x 105, 108 (3d Cir. 2014) (quoting Billet v. CIGNA Corp., 940 F.2d 812, 825 (3d Cir. 1991).

Importantly, where an employer relies on particular criticisms for the adverse employment action, "the issue is not whether the [ ] criticisms of [the plaintiff] were substantiated or valid.... [T]he question is whether [the employer] believed those criticisms to be accurate and actually relied upon them." Steward, 231 F. App'x at 210 (citing Fuentes, 32 F.3d at 766–67). "A plaintiff does not establish pretext by pointing to commendation of the plaintiff in categories the defendant says it did not rely upon in making the employment decision at issue. Rather, the factfinder must consider the employee's performance in the categories that the employer deemed relevant to the employment decision." Steward v. Sears Roebuck & Co., 231 F. App'x 201, 210 (3d Cir. 2007) (internal citations omitted).

In an effort to discredit Mid-Atlantic's proffered reasons for her termination, Plaintiff points to the "independent evidence" of Mid-Atlantic's desire to "cut salaries for administrative staff allegedly making too much." (Pl.'s Resp. 23 n.7.) This statement was purportedly made by Jennifer Kelly to Janis Brown, both Maplewood employees, and Janis Brown allegedly repeated Jennifer Kelly's statement to Plaintiff. Plaintiff argues this statement, in addition to the fact that

no directors or managers under the age of 40 were placed on performance improvement plans or terminated during the relevant time period, demonstrates pretext. (Pl.'s Resp. 19 n.6, 23 n.7.)

In its Reply, Mid-Atlantic points out that Plaintiff never requested any records associated with performance improvement plans for managers or directors under the age of 40 during discovery, and thus Plaintiff's speculation regarding the absence of such records is insufficient to survive summary judgment. (Def.'s Reply 5 n.4.) Mid-Atlantic further argues that the statement regarding "cutting salaries" constitutes inadmissible double hearsay, and thus cannot be considered for purposes of deciding summary judgment. See Smith v. City of Allentown, 589 F.3d 684, 693 (3d Cir. 2009) ("Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment.")

I agree with Mid-Atlantic that Jennifer Kelly's alleged "cutting salaries" statement may not be considered because it violates the prohibition against hearsay. However, I reach this conclusion based on different grounds than those articulated by Mid-Atlantic. Mid-Atlantic cited to Smith v. City of Allentown 589 F.3d 684 (3d Cir. 2009) in support of its double hearsay argument. In Smith, the Third Circuit affirmed the district court's ruling that a statement made by one of the defendant's to a third party, which was then repeated to the plaintiff by that third party, constituted inadmissible hearsay. While the court recognized that the first "layer" of hearsay (i.e., the original statement made by the defendant) could be admissible pursuant to Federal Rule of Evidence 801(d)(2)(A) (statement by a party opponent), the court determined that the third party's repetition of the statement did not satisfy any of the exceptions to the rule against hearsay.

Here, neither Jennifer Kelly nor Janis Brown are party opponents, and thus Rule 801(d)(2)(A) does not apply. However, Federal Rule of Evidence 801(d)(2)(D) provides that a

statement is not hearsay if it is offered against an opposing party and "made by the party's agent or employee on a matter within the scope of that relationship and while it existed." In order for such a statement to be admissible, "it is necessary that the content of the declarant's statement concern the scope of her agency." Mathis v. Monza, 2013 WL 1058867, at *3 (W.D. Pa. Mar. 14, 2013), aff'd, 530 F. App'x 124 (3d Cir. 2013). As the proponent of this evidence, Plaintiff bears the burden to demonstrate that both women made this statement within the scope of an agency relationship with Mid-Atlantic. Lippay v. Christos, 996 F.2d 1490, 1497 (3d Cir. 1993).

Additionally, and critically, courts have found that a proponent of evidence under Rule 801(d)(2)(D) must first establish the identity of the declarant for admission under this Rule. See e.g., United States v. Cruz, 910 F.2d 1072, 1081 n.10 (3d Cir. 1990) ("[T]he identity of [a] declarant [is] critical because without knowing who she [is] or when she stated that … the company wanted someone younger, the court [can] not determine if the statement was made by an agent, concerning the scope of the agency, and during the agency. Without [this] information, the indicia of reliability embodied in the Fed. R. Evid. 801(d)(2)(D) non-hearsay definition [are] absent, and the statement [has] to be excluded."); Zaken v. Boerer, 964 F.2d 1319, 1324 (2d Cir. 1992) ("[W]ithout identification of the declarant, the statement concerning the reason for [the plaintiff's] termination did not have a sufficient evidentiary foundation to establish the existence of an agency relationship as required under Rule 801(d)(2)(D).").

Here, Mid-Atlantic highlights Plaintiff's deposition testimony wherein she was unable to recall who actually made the initial "cutting salaries" statement:

Q: With regard to Jennifer Kelly what do you allege [she] averred regarding HR salaries?

A: I didn't hear anything from Jennifer Kelly.

Q: Did you hear second-hand something that Jennifer Kelly stated?

A: … [Y]es, yes.

Q: Who did you hear that from?

A: Janis Brown.

…

Q: Did Janis Brown specifically tell you that Jennifer Kelly made a statement that employees of a particular age would have their salary cut?

A: She did not. And to my recollection, I don't really remember [Janis] saying it was said by Jennifer, but she did tell me that [Mid-Atlantic] was looking to cut salaries.
…

Q: Do you allege that Jennifer Kelly made a specific statement with regard to the salaries earned by managers over the age of 40 at Maplewood?

A: Not that I know of. I don't know who made the statement.

Q: You don't know who made what statement?

A: … I don't know who told Janis Brown that they were going to cut salaries. […].

(Pl.'s Dep. 158:8–17; 159:12–19; 160:23–25; 161: 1–8.)

In light of Plaintiff's testimony, I conclude that "it is fatal to [her] argument that [she] cannot affirmatively identify" the original declarant of the "cutting salaries" statement. <u>Mathis</u>, 2013 WL 1058867, at *2.[8] In other words, Plaintiff has not met her burden in identifying an employee from Mid-Atlantic who made the original statement regarding "cutting salaries" within the scope of her employment. For this reason, the "cutting salaries" statement constitutes inadmissible hearsay, and I will not consider it for purposes of this Opinion.

Disregarding the "cutting salaries" statement, I observe that Plaintiff has failed to set forth any evidence to refute, contradict, or cast doubt upon the "core facts" put forward by Mid-Atlantic as the legitimate basis for its decision to terminate her. <u>Cridland v. Kmart Corp.</u>, 929 F.

---

[8] Plaintiff also alleges that Tracey Alley, another Maplewood employee, made similar statements. However, Plaintiff testified that she did not know Tracey Alley, nor did Plaintiff recall anyone telling her that Tracey Alley actually made any such statement. (Pl.'s Dep. 160:6–12.)

Supp. 2d 377, 387–88 (E.D. Pa. 2013). Plaintiff admitted that Medicare goals had not been met, and it is undisputed that this was one of the established goals of Plaintiff's PIP. Plaintiff admitted that nobody showed up to the "open house" event. Additionally, Plaintiff has not pointed to any evidence from other employees or supervisors within Mid-Atlantic to refute Fogelman and/or Balmer's determination that Plaintiff's performance was inadequate.

In the absence of such evidence, I conclude that Plaintiff has failed to demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Mid-Atlantic's proffered reason for her termination. Ziegler v. Delaware Cty. Daily Times, 128 F. Supp. 2d 790, 807 (E.D. Pa. 2001). In other words, Plaintiff has failed to identify record evidence from which a reasonable fact finder could conclude Mid-Atlantic's facially legitimate, non-discriminatory reason for her termination was "unworthy of credence." For this reason, Plaintiff has not met her burden in establishing the first method of pretext. See Willis, 808 F.3d at 647 (recognizing that a plaintiff's attempt to cast doubt on a defendant's articulated reason(s) as pretext will be unsuccessful where she has not pointed to evidence that demonstrates that the defendant did not in fact rely on its articulated reason(s) when terminating her employment); see also Fasold v. Justice, 409 F.3d 178, 186 (3d Cir. 2005) (observing that because the plaintiff's direct supervisor was "basically satisfied" with the plaintiff's job performance, this undermined the defendant's stated reason for his firing, and thus a reasonable fact finder could conclude that the defendant's stated reason was "unworthy of credence").

ii.   Second Method of Pretext

Plaintiff has not expressly briefed the second method for establishing pretext. However, the evidence upon which she relies (in arguing that Mid-Atlantic's proffered reason is pretextual) corresponds to one of the categories comprising this second method.

Under the second method of establishing pretext, a plaintiff must point to evidence "with sufficient probative force such that a factfinder could conclude by a preponderance of the evidence that age was a motivating or determinative factor in the [adverse] employment decision." Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 644–45 (3d Cir. 1998). A plaintiff may accomplish this by showing that the employer has: (1) previously discriminated against her; (2) that the employer has discriminated against other persons within the plaintiff's protected class or within another protected class; or (3) that the employer has treated similarly situated persons more favorably not within the protected class. Armstrong v. Wes Health Sys., 2016 WL 3027759, at *5 (E.D. Pa. May 26, 2016); Willis, 808 F.3d at 644–45.

Plaintiff has not argued that she was previously discriminated against based on her age,[9] nor has she expressly argued that younger employees were treated more favorably. However, Plaintiff does rely heavily on Mid-Atlantic's termination of multiple other employees—all over 40 years of age—in an effort to establish pretext. Plaintiff alleges that Mid-Atlantic "demonstrated a pattern and practice of firing employees based upon age[.]" (Compl. ¶ 25.) The second category therefore requires further examination (i.e., that Mid-Atlantic discriminated against other persons within Plaintiff's protected class).

---

[9] Plaintiff asserts in a conclusory fashion that she was "harassed" by Fogelman and Balmer because Fogelman would, on occasion, ask her questions to which she did not know the answer, and she felt put "on the spot." When asked about specific instances of harassing conduct, Plaintiff testified, "… I don't remember exactly the things that they said, but I felt as though they were being harassing and they were harassing me and they wanted me out." (Pl.'s Dep. 142:1-5.) Regarding the meeting in which she was terminated, Plaintiff testified that there was "anger in the room," but she did not believe there to be any harassing conduct. (Pl.'s Dep. 143:11-15.) Plaintiff next testified that she believed she was harassed because she was the oldest Admissions Director. However, Plaintiff expressly stated that she did not believe Fogelman wanted to terminate her because of her age, she acknowledged that his questions to her did not pertain to her age, and, regarding the other Admissions Directors, Plaintiff was unable to recall any of their names and/or ages. The only other instance of alleged harassing conduct occurred when Fogelman and Balmer used a "harsh tone" with Plaintiff when discussing her job expectations during one meeting. (Pl.'s Dep. 148:19-25.) Even when viewed in the light most favorable to Plaintiff, her vague testimony of prior "harassment" (i.e., discrimination)—which represents the only evidence on this issue—does not supply the required "probative force" necessary to satisfy the first category. (Pl.'s Dep. 168:01-169:25; 170:1–17.)

Plaintiff points out that Mid-Atlantic terminated: Louis DeCicco,[10] Director of Maintenance (age 48); Stephanie Massey, Human Resources Manager (age 58); Jane Capewell Gibbs (Human Resources Director) (exact age unknown, but over 40); and Roge Tanai, Nursing Home Administrator (age 55).[11] (Pl.'s Ex. W.) The respective dates of termination were June 20, 2012, May 21, 2012, May 1, 2012, and December 31, 2011. Plaintiff's termination on July 13, 2012 thus occurred within three months of at least three of the other terminated employees.

Plaintiff acknowledges that Massey, Gibbs, and DeCicco were all placed on performance improvement plans prior to their termination, and Plaintiff's own exhibits reflect that Roge Tanai was similarly terminated, according to Mid-Atlantic, for poor work performance. (Pl.'s Exs. V, W.) Plaintiff further emphasizes that DeCicco's replacement, Robert Mitchell, was 41 years-old at the time of his hire on July 12, 2012. (Pl.'s Resp. 17, Pl.'s Ex. L.)

In the discrimination context, statistical evidence of an employer's "pattern or practice" of discrimination may be probative of pretext. Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 542–43 (3d Cir. 1992). However, "raw data" unaccompanied by a sufficient analytical context "does not support a finding of invidious intent." Cridland, 929 F. Supp. 2d at 388–89 (citing Ezold, 983 F.2d at 542–43); see also Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 279 (3d Cir. 2010) (recognizing that evidence that "might hint at discrimination" does not show, by a preponderance of the evidence, that discrimination was a motivating or determinative cause of the employment decision).

For example, in Von Rudenborg—a case relied upon by Plaintiff in support of her prima facie case—the court ruled that the plaintiff failed to establish pretext despite the fact that the

---

[10] Louis DeCicco is the plaintiff in a separate lawsuit currently before me (Civ. No. 14-cv-2933), which also stems from his termination by Mid-Atlantic. That case is pending.

[11] I note that Jane Capewell Gibbs was not employed at the Maplewood facility, but rather worked at Mid-Atlantic's Cliveden facility. (Compl. ¶ 18(g).)

defendant employer had terminated five older employees over the years. 2011 WL 4594220, at *6 ("Plaintiff has only provided a list of older employees who have been terminated, without any perspective on the broader context of the company's treatment of older employees as a class."). The court reasoned that merely attempting to "imply animus through a pattern-or-practice approach" is insufficient because it does not amount to a "standard operating procedure." Id. at 6 (citation omitted); see also Ezold, 983 F.2d at 542–43 ("Because no conclusion can be drawn from [the plaintiff's] raw numbers on underrepresentation, they are not probative of [the employer's] alleged discriminatory motive."). Here, Plaintiff stresses that Mid-Atlantic has not produced any performance improvement plans for employees under 40, yet Mid-Atlantic argues that such records were never requested during discovery. And, at this stage of the analysis, it is not Mid-Atlantic's burden to prove that it did not discriminate.

Similarly, in Cridland v. Kmart Corp., the district court concluded that the plaintiff failed to satisfy the second method of pretext because he merely pointed to another older employee's termination despite the employer's retention of approximately ten younger employees. 929 F. Supp. 2d 377, 388 (E.D. Pa. 2013). The court held that "a reasonable factfinder could not conclude based on these facts alone that [the supervisor] acted with invidious purpose," in part because there was "no showing that the younger [employees] had received the same degree of negative reviews as had Plaintiff[.]'" Id. at 388. Such "raw data does not support a finding invidious intent." Id. at 388.

Here, Plaintiff has not supplied a breakdown or analysis of how many employees worked at Maplewood (or the other facilities), how many employees were over 40, or how many employees were placed on PIPs. Plaintiff acknowledges that (like her) DeCicco, Gibbs, and Massey were placed on PIPs prior to their termination. Notwithstanding the relatively close

temporal proximity between Plaintiff's termination and that of DeCicco and Massey, Plaintiff has not pointed to record evidence to suggest that younger employees exhibited similar performance levels, but were not placed on performance improvement plans. And, as noted above, Plaintiff relies heavily on the apparent lack of performance improvement plans for employees under 40. However, the Third Circuit has expressly acknowledged that this type of "reliance by omission" argument actually undermines Plaintiff's position:

> The argument that the absence of disciplinary incidents involving younger staff members is evidence of more favorable treatment, defies this Court's precedent and logic. This Court has emphasized that evidence of more favorable treatment cannot be viewed in a vacuum, but rather that the record must be viewed as a whole. Viewing the record in its entirety, which includes [the plaintiff's] documented [performance] issues …, this argument works against [the plaintiff]…. The record does not reveal any evidence of similarly situated, substantially younger employees experiencing similar difficulties and not receiving discipline.

Willis, 808 F.3d at 646 (internal citations omitted).[12]

Ultimately, even when viewing the evidence and circumstances discussed above in the light most favorable to Plaintiff, I conclude that she has failed to point to evidence supplying "sufficient probative force such that a factfinder could conclude by a preponderance of the evidence that age was a motivating or determinative factor in the employment decision." Simpson, 142 F.3d at 644–45. Accordingly, Plaintiff has failed to establish the second method of pretext.

---

[12] I further note that while Plaintiff advances her "pattern and practice" argument by pointing out that employees over 40 were terminated, she ignores that her direct replacement was six years *older* than Louis DeCicco, and just one year younger than Roge Tanai. Additionally, Alton Swinson, Assistant Director of Maintenance (age 67) was approximately nine years *older* than Plaintiff at the time of her termination, and there is no argument or evidence that Swinson was terminated or placed on a performance improvement plan. (Pl.'s Ex. W.) While it is true that Mid-Atlantic terminated multiple manager and director-level employees between December 2011 and July 2012, Mid-Atlantic also *hired* multiple manager and director-level employees who were over 40 in the months following Plaintiff's termination. (See Pl.'s Ex. W.) Specifically, Mid-Atlantic hired Barbara Kane, Business Office Manager (age 50) on December 3, 2012, and Jody Ray, Director of H&L (age 54) on November 26, 2012.

IV.     **CONCLUSION**

Plaintiff is unable to demonstrate that Mid-Atlantic's facially legitimate, non-discriminatory reasons for her termination were pretextual. Accordingly, I will grant Mid-Atlantic's motion for summary judgment.[13]

An appropriate Order follows.

---

[13] The reasons articulated above comprise the complete basis for my ruling. While I have not weighed the following testimony, or relied upon it to formulate any credibility determinations, I must point out Plaintiff's own deposition testimony. As noted, for liability to ultimately attach, a plaintiff must prove that she was discriminated against *because of* her age. When asked at her deposition, "…What specifically leads you to believe that [Fogelman] wanted you out because of your age?", Plaintiff's response was, "I don't believe he wanted me out because of my age. I just feel as though he just wanted me out. But again, I was the oldest out of all the liaisons and admission directors." Plaintiff made this assertion despite being unable to recall the names or ages of any other admissions directors. Plaintiff was then asked, "[Do] you allege Sarah Balmer wanted you out because of your age?" Plaintiff responded, "Sarah Balmer wanted me out because she just didn't like me." (Pl.'s Dep. 170:6–17.)